UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARCUS DONTE MIDDLEBROOK #351947,

    Petitioner,

    v.

CINDI S. CURTIN,

    Respondent.

Case No. 1:07-cv-1242

HONORABLE PAUL L. MALONEY

Magistrate Judge Ellen S. Carmody

---

# OPINION and ORDER

**Overruling the Petitioner's Objections and Adopting the R&R;
Denying the 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus;**

**Entering Judgment in Favor of the Respondent;
Declining to Issue a Certificate of Appealability;
Terminating and Closing the Case**

On the evening of May 3, 2003, Nicole Bell drove to pick up Marcus Donte Middlebrook ("Middlebrook"), with whom she had had a sexual relationship for several months. Ms. Bell drove Middlebrook to the home of one of his friends; when she parked the car, Middlebrook shot her in the face – apparently in the mouth, given a trauma surgeon's testimony that he later removed bullet fragments from the back of her throat – dragged her out of the car, and ordered her to walk into the nearby river, kicking her in the head and in the back as she did so. When Bell stopped in the middle of the river, Middlebrook raised his arm as if to shoot her again, and in fear of that possibility she knelt down in the water. After Bell saw Middlebrook walk away and leave in her car, she left the

river, called 911, and was taken to the hospital for surgery for her life-threatening wounds.

In April 2004, following a trial in the 30th Circuit Court for Ingham County, Michigan, a jury convicted Middlebrook of three offenses in connection with his attack on Ms. Bell. The state trial judge sentenced Middlebrook to a term of imprisonment of 30-60 years for assault with intent to commit murder (in violation of MICH. COMP. LAWS § 750.83), a consecutive term of 2 years for felony firearm (MICH. COMP. LAWS § 750.227B-A), and a concurrent term of 40-60 months for unlawful driving away of a vehicle ("UDAA") (MICH. COMP. LAWS § 750.413). On direct appeal, Middlebrook asserted two assignments of error. The Michigan Court of Appeals affirmed his conviction in an opinion stating as follows:

> This case arose when defendant received a ride from his girlfriend's roommate, shot her in the face with a handgun at close range, pushed her down the bank of a river, forced her at gunpoint to walk out to midstream, and then drove away in her car. We affirm.
>
> Defendant first contends [that] he was denied his right to a fair trial when (1) the jurors discussed a witness' testimony prior to jury deliberations, and (2) the jurors were exposed to extraneous information. We disagree. We review for abuse of discretion the trial court's denial of a motion for mistrial. *People v. Messenger*, 221 Mich. App. 171, 175, 561 N.W.2d 463 (1997). We will only reverse the denial of a mistrial founded on juror misconduct when the misconduct "affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment. A new trial will not be granted if no substantial harm was done thereby to the defendant, even though the misconduct may merit a rebuke from the trial court if brought to its notice." *Id.*
>
> In this case, the court received a letter from one of the jurors indicating problems in the jury room. A recorded interview with the juror indicated that the other jurors had discussed the credibility of one of the witnesses before deliberations. The jurors also indicated that the "colored" juror told other jurors that her family told her to "watch her back," and she also allegedly noted that defendant "had quite a family." The complaining juror admitted that the "watch her back" comment was a joke.
>
> The court brought two other jurors into chambers separately for questioning, including the allegedly problematic juror. They explained that they had not discussed the case with anyone, including family members or other jurors. The

accused juror explained that her comment was directed at the court's instruction that the jury avoid contact with anyone who might be involved in the case, and that the comments from her family were meant entirely in jest and related to her jury duty, generally, not to the case. Under the circumstances, defendant presented no evidence, beyond the bare allegation, that any of the jurors discussed the credibility of any witness prior to jury deliberations or that the jury was exposed to extraneous information. Because defendant failed to demonstrate that the jurors engaged in any meaningful misconduct or tainted their deliberations with any extraneous influences, the trial court did not abuse its discretion in denying defendant's request for a mistrial.

Defendant next contends that the court erred in sustaining the prosecutor's challenge of a potential juror for cause on the basis that the potential juror had expressed her bias for the defense. We disagree. "We review for abuse of discretion a trial court's rulings for challenges for cause based on bias." *People v. Williams*, 241 Mich. App. 519, 521, 616 N.W.2d 710 (2000). A party may challenge a juror for cause if the juror is "biased for or against a party or attorney[";] "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be[";] or "has opinions or conscientious scruples that would improperly influence the person's verdict . . . ." MCR 2.511(D).

In this case, defendant contends [that] the potential juror explained that while she had biases towards the defense, she could put those biases aside. However, the potential juror clearly acknowledged that, as a result of her employment, she had biases in favor of the defense. She asserted that she was not certain that she could set those biases aside and decide the case based solely upon the evidence presented in court. Although she initially said she would follow the court's instructions, she modified her answer and noted that she was not sure she could put her experience aside and follow the court's instructions. "This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, *supra* at 522. The court did not abuse its discretion by excusing the potential juror for cause.

*People v. Middlebrook*, No. 260589, 2006 WL 2000110, *1-2 (Mich. App. July 18, 2006) (per curiam) (P.J. D'Onofrio, O'Connell, Servitto) (some ¶ breaks added). The Michigan Supreme Court denied leave to review, *see* No. 132027, 477 Mich. 974, 725 N.W.2d 31 (Mich. Dec. 28, 2006), and the United States Supreme Court denied Middlebrook's petition for a writ of *certiorari sub nom. Middlebrook v. Michigan*, 552 U.S. 837, 128 S.Ct. (Oct. 1, 2007).

Middlebrook timely filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court in late 2007, followed by an amended petition in June 2008. The amended petition asserts the same two claims raised in Middlebrook's state-court direct appeal, and adds two additional claims. Ground one contends that Middlebrook was denied his right to a fair trial when the jurors discussed testimony and shared outside informaton about him during the trial (prior to deliberations). Ground two contends that the trial court denied Middlebrook's right to a fair trial by excusing for cause a juror who stated that although she had a bias in favor of the defense, she would follow the court's instructions.

Ground three contends that trial counsel rendered constitutionally ineffective assistance by failing to call defendant's then-girlfriend Delisa Fountain, defendant's father Melvin Middlebrook, and one John Sanders as alibi witnesses; by failing to subpoena telephone records which would have proven his innocence; by failing to insist on the dismissal of biased juror Jackson but acquiescing in the dismissal of unbiased juror Logan; by failing to perform a proper investigation; and by failing to call expert witnesses in the field of DNA evidence, fingerprints, and handwriting analysis. Middlebrook contends that appellate counsel rendered constitutionally ineffective assistance by failing to raise this third claim on direct appeal.

Ground four contends that Middlebrook is actually innocent of the crimes of conviction (felony assault with the intent to murder, possession of a firearm during commission of a felony, and unlawful driving away of a motor vehicle). Middlebrook asserts ineffective assistance of appellate counsel as his reason for not asserting this fourth claim on direct appeal.

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report

4

and Recommendation ("R&R") on June 22, 2010. With an extension of time, petitioner filed timely objections on Thursday, August 5, 2010.[1][2] **The court finds the R&R to be well-reasoned and is unconvinced by petitioner Middlebrook's objections.** For the reasons explained by the R&R, the court will deny the habeas petition and decline to issue a certificate of appealability.

---

[1]

After receiving Middlebrook's objections, respondent Curtin had fourteen days from service of the objections to file a response. *Horacek v. Caruso*, 2008 WL 4820483, *1 n.1 (W.D. Mich. Oct. 30, 2008) (Maloney, C.J.) (citing W.D. MICH. LCIVR 72.3(b)). The fourteen days began on the day after she was served with the objections, *see* FED. R. CIV. P. 6(a)(1)(A), and the court counts all calendar days, including weekends and holidays, *see* FED. R. CIV. P. 6(a)(1)(B). The fourteen days have not elapsed, but Curtin cannot be prejudiced by the court issuing its decision without waiting for her objections, because the court is dismissing the petition.

[2]

"'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate Judge's report that the district court must specifically consider")).

*See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.));

**When a party merely purports to incorporate by reference arguments, evidence or legal authorities presented in prior filings, he has lodged an unavailing general objection.** *See Miller v. Palmer*, 2008 WL 4457838, *2 (E.D. Mich. Sept. 30, 2008) ("An objecting party may not simply 'incorporate by reference' earlier pleadings; similarly[,] merely reproducing an earlier unsuccessful motion . . . is not a sufficient objection to the magistrate judge's analysis, and will ordinarily be treated by the court as an unavailing general objection.") (citing *Howard v. HHS*, 932 F.2d 505, 508 (6th Cir. 1991)), *recon. denied*, 2008 WL 5102254 (E.D. Mich. Dec. 1, 2008));

*Foster v. Ameriquest Mortgage*, 2009 WL 646420, *2 (E.D. Mich. Mar. 11, 2009) (adopting R&R without review, noting, "Plaintiff does not list specific objections . . . . Instead, Plaintiff merely attempts to reassert his claims for relief. * * * 'Overly general objections do not satisfy the objection requirement.'") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006));

**The Magistrate Judge correctly rejects Middlebrook's first ground for habeas relief, the juror-conduct claim,** *see* **R&R at 12-16.** After receiving juror Logan's letter relaying juror Jackson-Smith's comments about needing to "watch her back" as a juror and about Middlebrook having "quite a family", the trial judge satisfied his constitutional duty to "'take steps to determine what the effect of such extraneous information actually was on th[e] jury.'" R&R at 15 (quoting *Williams*, 380 F.3d at 945), and his determination was not based on any clearly erroneous factual findings, either. The Michigan Court of Appeals so held, and neither Middlebrook's submission before the Magistrate Judge nor his objections now show that its holding was contrary to, or unreasonably applied, clearly established federal law (i.e., the holdings of the United States Supreme Court). Middlebrook's objection on this score is at best unclear and cites no United States Supreme Court precedent, stating only as follows:

> However, when a juror communicates objection [sic] extrinsic facts regarding the defendant [and] the alleged crime to the [sic] within the meaning of the confrontation clause. *Jeffries v. Wood*, 114 F3d 1484, 1490 (9th Cir 1997) [*en banc*]. [S]*ee also Mach v Stewart*, 137 F3d 630, 1997 of which helds [sic] that (1) petitioner's right to impartial jury was violated when jury panel was exposed to potential jurors expert[-]like statement regarding veracity of children asserting claims of sexual abuse, an[d] (2) statement had substantial effect or influence on verdict, warranting revers[al].

Petitioner's Objections at 2. Moreover, the Ninth Circuit *en banc* decision which Middlebrook cites, *Jeffries,* 114 F.3d 1484, is of no avail to him for three reasons. First, *Jeffries* was an opinion of the Ninth Circuit, and thus has no precedential force in this circuit, and no value in assessing what our Court of Appeals' understanding of "clearly established federal law" is. Second, *Jeffries* is legally distinguishable from the instant case, as it involved the law as it stood *before* the effective date of AEDPA, which imposed a new standard for federal habeas courts' review of state-court constitutional determinations in criminal cases. *See Jeffries*, 114 F.3d at 1487. Third, *Jeffries* is

factually distinguishable from the instant case in a very significant way, because the alleged juror misconduct/influence was one juror informing the others that the defendant, on trial for aggravated first-degree murder, was a convicted armed robber. *See Jeffries*, 114 F.3d at 1488.

The other decision which *Middlebrook* cites in objection to the recommended denial of his first habeas claim, *Mach v Stewart*, 137 F.3d 630 (9th Cir. 1997), is likewise of no avail to him for at least two reasons. First, *Mach* is a decision of the Ninth Circuit, which means that it lacks precedential force in our circuit and has no value in assessing how our Court of Appeals understands "clearly established law" on this issue. Second, *Mach*, which was a prosecution for sexual conduct with a minor under the age of 14 (specifically, the defendant's performing oral sex on an eight-year-old friend of his daughter) is readily distinguishable from the instant case. In response to *voir dire* questioning by the trial judge there, a juror named Bodkin stated, in the presence of the jury pool, that she had taken courses in child psychology and had worked "extensively" with psychologists and psychiatrists. *See Mach*, 137 F.3d at 631-32. Bodkin also made four separate statements, again in the presence of the jury pool, that "she had *never* been involved in a case in which a child accused an adult of sexual abuse where that child's statements had not been borne out", *id.* at 632-33. Although the judge warned Bodkin and the rest of the jury pool that jurors must make determinations based on the evidence in the case and not on their own feelings or experiences, he also went on to elicit yet another statement from Bodkin that she had never known a child to lie about sexual abuse; the judge asked the other potential jurors whether anyone disagreed with her statement, and none of them responded. *See id.* at 633. The judge nonetheless failed to conduct any investigation to determine whether the jury pool had been "infected" by Bodkin's "expert-like statements," simply denying Mach's motion for a mistrial and requiring him to be judged by a jury

7

consisting of Bodkin and others who had heard her uncontested statements. *See id.* The Ninth Circuit held that the trial judge should have granted Mach a mistrial even under the harmless-error standard, *id.* By contrast, the juror-to-juror statements in the instant case were not "expert-like" and were not repeated four or five times like Bodkin's statements in *Mach*, and the judge in Middlebrook's case (unlike the judge in *Mach*) conscientiously investigated and interviewed the declarant-juror and other jurors to ensure that Middlebrook was afforded an impartial jury.

**The Magistrate Judge also correctly rejects Middlebrook's second ground for habeas relief, the unbiased-juror claim,** *see* **R&R at 16-19.** The trial judge manifestly did not act contrary to, or unreasonably apply, any clearly established federal law (any holding of the United States Supreme Court), in dismissing for cause juror Hall, who plainly stated that her six years as a paralegal for criminal-defense attorneys gave her "a lot of biases" and that while she "would like to believe" that she would follow the court's instructions, she was "to be perfectly honest . . . just not sure" that she could put those biases aside and apply the law impartially. *See* R&R at 17 (quoting April 19, 2004 Trial Tr. at 60). The thrust of Middlebrook's objection on this score is utterly unsupported by United States Supreme Court holdings, or even by any Sixth Circuit Court of Appeals' decisions interpreting and applying those holdings. Middlebrook begins with the unobjectionable proposition that

> the relevant inquiry here, pursuant to the United States Supreme Court, is "not whether a person has the existence of any preconceived notion, or admits possible bias. But, the question is whether the juror can lay aside her impressions or opinions and render a verdict based on the evidence presented in court."

Petitioner's Objections at 3 (quoting *Irving v. Dowd*, 366 U.S. 717, 723 (1961) and citing *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000) and *Hughes v. US*, 258 F.3d 453 (6th Cir. 2001) and *Miller*

8

*v. Webb*, 385 F.3d 666 (6th Cir. 2004)). From there, however, Middlebrook goes on to completely mischaracterize what juror Hall said and what the prosecution and the trial judge said and did in response:

> Lawyers are not excused from duty because of their positions. The prosecution improperly sought a challenge for cause of this juror *based solely on her capacity of a defense attorney [paralegal for criminal defense attorneys] and should have drilled home [sic] as stated by the U.S. Supreme Court*.

Petitioner's Objections at 3 (emphasis added). The record unequivocally shows, however, that the trial judge excused juror Hall not merely because she worked for criminal-defense attorneys, but specifically because she admitted that she could not guarantee that she would put aside her pro-defense bias and weigh the evidence fairly and impartially.

Middlebrook goes on to make the conclusory assertion that because juror Hall initially said she would follow the judge's instructions, "[t]he fact [that] she later said she wasn't sure, should have been of no consequence . . . ." Petitioner's Objections at 3. He concludes this sentence by citing *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1993), which is irrelevant in a Sixth Circuit AEDPA habeas proceeding and does not support his assertion in any event. Middlebrook also cites *Smith v. Phillips*, 455 U.S. 209, 215 (1982), which in no way supports his novel assertion that the trial judge was constitutionally obligated to ignore or give no weight to juror Hall's frank admission that she could not honestly promise to be impartial. Middlebrook is right that "a juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias", Petitioner's Objections at 3. But nothing in the record suggests that the trial judge erroneously believed himself compelled to excuse juror Hall as an unthinking, reflexive reaction to her admission of possible bias. On the contrary, juror Hall admitted *actual* pro-defense bias (not merely *potential* bias) and, upon further questioning by the trial judge, never arrived at a conclusive promise that she

9

was both willing and *able* to put that bias aside and give both sides a fair and equal chance to persuade her of the import of the evidence under the law. Thus, while a juror's admission of potential bias does not *necessarily* entail a finding of actual bias, Middlebrook fails to show that the trial judge clearly erred in finding that Hall could not be impartial, or that the judge acted contrary to or unreasonably applied United States Supreme Court precedent by excusing her for cause as a consequence.[3]

**The Magistrate Judge also correctly rejects Middlebrook's third ground for habeas relief, the claim that his trial counsel rendered constitutionally ineffective assistance by failing to call alibi witnesses, failing to subpoena telephone records, failing to advocate for the retention of juror Logan and the dismissal of juror Jackson-Smith,** *see* **R&R at 19-22.** As the Magistrate Judge notes, Middlebrook offered nothing more than speculation about what the alibi witnesses would have testified, what the telephone records would have shown, and what the handwriting, DNA and fingerprint experts would have testified.

For example, Middlebrook did not offer affidavits from any of the proposed alibi witnesses or proposed experts as to the substance of their intended testimony. He has not even offered

---

[3]

After citing federal decisions which he (wrongly) believes support his position on this second habeas claim, Middlebrook complains that "the R&R . . . cites not a single state nor federal case that overrules th[ose] binding precedents . . . ." Petitioner's Objections at 4. The court reminds the petitioner that the decisions of state courts, and the decisions of federal courts below the U.S. Supreme Court, do not define the "clearly established federal law" which a federal habeas court must ascertain. *See Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) ("[A] district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to . . . federal law."); *Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000 (making same point). "Under AEDPA, if there is no 'clearly established Federal law, *as determined by the Supreme Court*' that supports a petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, writing in pertinent part for the Court)) (emphasis added).

affidavits from any putative alibi witnesses of expert witness confirming that they would have been available and willing to testify on his behalf. This failure to substantiate the alibi-witness and expert-witness habeas claim with affidavits is fatal to Middlebrook even securing a hearing on this claim, let alone prevailing on the claim. "Before a hearing on a habeas corpus petition must be held, 'the petition must be accompanied by a detailed and specific affidavit which shows the petitioner has actual proof of the allegations going beyond mere unsupported assertions.'" *Stein v. Eberlin*, 2009 WL 650363, *3 (N.D. Ohio Mar. 10, 2009) (Boyko, J.) (quoting *Barry v. US*, 528 F.2d 1094, 1101 (7th Cir. 1976)); *accord US v. Brooks*, 677 F.2d 907, 911-12 (D.C. Cir. 1982). *See, e.g., Clark v. Waller*, 490 F.3d 551, 558 (6th Cir.) (C.J. Boggs, Batchelder, Griffin) (rejecting habeas claim of ineffective assistance based on trial counsel's failure to call a particular witness, where petitioner did not present an affidavit from that would-be witness or otherwise, and noting, "his argument is based on nothing more than the assertion, based on the content of the purported affidavit he unsuccessfully sought to introduce in the state post-conviction proceedings, that 'Felix Lockett's testimony clearly would have aided [his] defense' – a claim considerably weaker than a demonstration of a likelihood of a different outcome at trial"), *cert. denied*, 552 U.S. 1030 (2007); *Smith v. Palmer*, 2010 WL 233858, *10 (W.D. Mich. Jan. 13, 2010) (Paul L. Maloney, C.J.) ("O'Day's affidavit indicates a willingness, in the current tense, to testify that he, but not Smith, was . . . involved in the armed robbery of White. Crucially, O'Day's affidavit does *not* state that he was willing, *at the time of Smith's trial*, to testify to that effect. Therefore, this portion of Smith's objection lacks evidentiary support . . . .") (citing *Williams v. Stovall*, 2009 WL 1212980, *17 (E.D. Mich. Apr. 29, 2009) (Battani, J.) (rejecting habeas petitioner's claim that trial counsel was ineffective for failing to call certain witnesses, noting that "petitioner has presented no affidavits

11

from the witnesses averring that they were available and willing to testify [at trial], and that they would have done so in the manner suggested by petitioner.")).*[4]*

The same evidentiary deficiency defeats the portion of Middlebrook's third habeas claim which contends that trial counsel was constitutionally ineffective for failing to subpoena telephone records which allegedly would have exculpated him. (Middlebrook alleges, without specific elaboration, that the telephone records would have shown that he was not with Bell on the night of May 3, 2003 when she was shot in the face at close range.) In his objections on this score, Middlebrook does nothing to identify any defect in the Magistrate Judge's reasoning or conclusion. He merely asserts that this court should hold an evidentiary hearing at which his trial counsel could explain why he did not call alibi witnesses or subpoena the aforementioned telephone records, *see* Petitioner's Objections at 4-5. Absent evidentiary support, such a conclusory assertion is again not enough to even merit a hearing, let alone enough for him to prevail on this claim. As one Fourth Circuit court reasoned on the same issue,

> Wiles claims that counsel was ineffective in failing to obtain certain telephone records . . . . Wiles claims that the telephone records could have been used to discredit the testimony of Thomas and Belinda Scarce, who both testified that Wiles had called them in the middle of the night after the murder, claiming that he had done something wrong. * * * [I]t is purely speculative as to whether the telephone records would help, rather than hurt, Wiles' defense. Accordingly, . . . Wiles has not shown that counsel's representation fell below an objective standard of reasonableness, or that failure to obtain the telephone records prejudiced Wiles' defense. * * *

---

4

See *Clinkscale v. Carter*, 375 F.3d 430, 447 (6th Cir. 2004) (D.J. McKeague, sitting by designation, concurring in part & dissenting in part) ("In holding that petitioner had not shown prejudice [from trial counsel's failure to call alibi witnesses], the district court noted that petitioner had offered no proof of the nature of his putative alibi witnesses' testimony or even that they would in fact have been available and willing to so testify. The majority correctly points out that the district court erroneously ignored the affidavit of one of the alibi witnesses, petitioner's father.").

*Wiles v. Dillman*, 2008 WL 2783159, *7 (W.D. Va. July 17, 2008) (Samuel Wilson, J.), *app. dismissed*, 304 F. App'x 190 (4th Cir. 2008) (per curiam) (Wilkinson, Michael, King) (declining to issue certificate of appealability).

As to trial counsel's "failure" to call a handwriting expert, Middlebrooks refers to the two "kites" (written notes made and conveyed in a prison) which the prosecution introduced to prove that he asked another prisoner to tell law-enforcement authorities that he was with that other prisoner at a location other than the scene of the attack at the time of the attack. Middlebrook writes as follows:

> Nor have the prosecutor or defense attorney provided any evidence as whose handwriting those kites were? [T]herefore, those kites should not have been used against petitioner without further proof. Which is a violation of petitioner['s right to] Due Process. [T]he petitioner never admitted to writing those kites, nor have the court asked? Counsel left [the] jury free to believe that petitioner actually wrote those kites, which the prosecutor relied on heavily.

Petitioner's Objections at 6-7. Significantly, however, even now Middlebrook never actually alleges that he did not write those two inculpatory kites. Without such an allegation, Middlebrook cannot show that he was prejudiced by the failure of the trial court or his defense counsel to ask him (and/or ask an expert witness) whether the handwriting on those kites was his.

**Penultimately, the Magistrate Judge correctly concludes that because all of Middlebrook's habeas claims lack merit, his state appellate counsel cannot have performed deficiently by "failing" to assert any of those claims on direct appeal.** "'By definition, . . . counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Kincade v. Wolfenbarger*, 324 F. App'x 482, 495 (6th Cir. 2009) (C.J. Boggs, Gilman, Rogers) (quoting *Greer v. Michel*, 264 F.3d 663, 676 (6th Cir. 2001)). *See, e.g., Burton v. Renico*, 391 F.3d 764, 780 (6th Cir. 2004) ("[A] constitutional claim based on the absence of an instruction regarding mitigation or

justification in this case lacks merit, so it cannot be said that failure to raise such an objection on direct appeal constituted ineffective assistance . . . ."); *Ashe v. Jones*, No. 98-1324, 2000 WL 263342, *4 (6th Cir. Feb. 29, 2000) (not in F. App'x) (Merritt, Siler, Moore) ("Kujenga's trial counsel was not required to make a meritless objection as to its admission."); *Smith v. Palmer*, 2010 WL 233858, *11 (W.D. Mich. Jan. 13, 2010) (Maloney, C.J.) ("[B]ecause trial counsel was not constitutionally ineffective, appellate counsel could not have performed deficiently (and could not have prejudiced Smith) by 'failing' to assert the trial-counsel argument on direct appeal.").

**Finally, the Magistrate Judge correctly recommends that Middlebrook's actual-innocence argument presents no basis for federal habeas relief**, *see* R&R at 23, because he did not properly exhaust this claim and because he fails to identify the requisite error of federal constitutional law that occurred during his trial or that has resulted from his conviction and imprisonment. *See, e.g., Strayhorn v. Booker*, – F. Supp.2d –, 2010 WL 2505900, *21 (E.D. Mich. June 18, 2010) (Lawrence Zatkoff, J.) (denying habeas petitioner's actual-innocence claim on same ground, following *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Murphy v. Bauman*, 2010 WL 2812974, *18 (E.D. Mich. June 3, 2010) (Paul Komives, U.S.M.J.) (same), *R&R adopted*, 2010 WL 2812977 (E.D. Mich. July 15, 2010) (Avern Cohn, J.).

**CERTIFICATE OF APPEALABILITY**

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability ("COAs"). *Colwell v. McKee*, 2009 WL 125223, *3 (W.D. Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001))). Rather, this court "must 'engage in a reasoned assessment of each claim' to determine whether a [COA] is warranted." *Oatis v. Caruso*,

2009 WL 80347, *4 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) (citing *Murphy*, 263 F.3d at 467)..

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (Paul L. Maloney, C.J.) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479 (2008), *cert. granted o.g.*, – U.S. –, 128 S.Ct. 2959 (2008)). To satisfy this standard, "the petitioner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are 'adequate to deserve further review.'" *Wardlaw*, 575 F. Supp.2d at 821(quoting *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Butz v. Berghuis*, 2009 WL 33462, *6 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)) and *Henley v. Bell*, – F. App'x –, –, 2009 WL 233283, *1 (6th Cir. Feb. 2, 2009) (p.c.) (Siler, Cole, Cook) (citing *Banks*, 540 U.S. at 674), *cert. denied*, – U.S. –, 129 S.Ct. 1057 (2009).

The petitioner need not show, however, that he is likely to succeed on appeal. *See Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337)).

The plaintiff does not meet the standard for a COA, because other reasonable jurists would

15

not disagree with the determination that his habeas claims are meritless and, in the case of the actual-innocence claim, not cognizable on federal habeas review. Nor has he presented any other issues which are "adequate to deserve further review."

## ORDER

Accordingly, having reviewed the habeas petition, the R&R, and Middlebrook's objections:

The petitioner's objections [document #35] are **OVERRULED**.

The R&R [document #31] is **ADOPTED**.

The habeas corpus petition is **DENIED**.

This case is **TERMINATED** and **CLOSED**.

The separate judgment required by FED. R. CIV. P. 58 shall issue contemporaneously.

This is a final order**, but the court declines to issue a certificate of appealability**.[5]

Petitioner should not file any further request with this court for a certificate of appealability.

**IT IS SO ORDERED this 16th day of August 2010.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[5] On its own, this court's refusal to issue a COA does not prevent the losing party from seeking a COA from the U.S. Court of Appeals under FED. R. APP. P. 22. *Wilson v. US*, 287 F. App'x 490, 494 (6th Cir. 2008) ("If the district judge denies a COA, a request may then be made to a court of appeals . . . .") (citing *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997)).